**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | |
|---|---|
| METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE, | |
| Plaintiff, | Civil Action No.: |
| v. | |
| FEDERAL EMERGENCY MANAGEMENT AGENCY and DEANNE CRISWELL, in her official capacity, | |
| Defendants. | |

## COMPLAINT

Plaintiff, Metropolitan Government of Nashville and Davidson County, Tennessee ("Metro Nashville"), by and through its attorneys, files this Complaint against Defendants, the Federal Emergency Management Agency and Deanne Criswell, Administrator of the Federal Emergency Management Agency (collectively, "FEMA"), and alleges as follows:

1.      This is an action for judicial review of FEMA's April 23, 2018 and July 2, 2018 determinations to not consider Metro Nashville's administrative appeals of FEMA's denials of certain disaster assistance funding.  This action is filed pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701, et seq..

2.      The administrative appeals at issue challenged FEMA's decisions to deny $11,329,591.44 in disaster assistance funding for Public Assistance-eligible work completed following the massive floods in Tennessee in 2010.

1

3. Metro Nashville filed its appeals timely and in accordance with all appeal procedures and deadlines required by statute, FEMA regulations, and applicable policies.

4. The sole rationale for FEMA's refusal to consider the appeals is that FEMA's grant administrator in Tennessee, the Tennessee Emergency Management Agency ("TEMA"), was allegedly late in forwarding the appeals to FEMA.

5. By refusing to consider Metro Nashville's appeals, FEMA denied Metro Nashville's "RIGHT OF APPEAL" as expressly provided by § 423(a) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act ("Stafford Act"). 42 U.S.C. § 5189a(a).

6. As the United States Civilian Board of Contract Appeals ("CBCA") has recently articulated in two decisions regarding similar disputes between an applicant for Public Assistance funding and FEMA[1]:

> the statute gives the right to appeal to the applicant, who perfects its appeal by filing it within sixty days after receiving notice of the funding denial. The statute does not contemplate that, once an applicant files a timely appeal within the sixty-day deadline contemplated by the statute, the appeal may retroactively be deemed untimely because FEMA's designated agent for accepting the applicant's appeal did not act appropriately in subsequently administering the timely-filed appeal. *In the Matter of City of Beaumont, Texas*, CBCA 7222-FEMA at 8 (January 12, 2022); *see also In the Matter of Consolidated North County Levee District*, CBCA 7244-FEMA, 7245-FEMA at 3 (June 2, 2022) (citing *City of Beaumont* and noting FEMA initially raised the issue of the State's untimely forwarding of applicant's timely appeal, but FEMA did not renew the argument in its brief as the CBCA has "previously rejected FEMA's request to dismiss an applicant's request for arbitration on such grounds").

---

[1] In 2018, Congress amended the Stafford Act to allow applicants for Disaster Assistance to request arbitration by the CBCA to resolve eligibility and payment disputes of more than $500,000. Disaster Recovery Reform Act of 2018, § 1219; 42 U.S.C.A. § 5189a(d) (2018). In FEMA arbitration proceedings, the CBCA does not act as part of the Federal Judiciary. Rather, the role of the CBCA in FEMA arbitration proceedings is to "'interpret the law *independently* on behalf of the Executive Branch'" and to render decisions "'as the final executive branch decision-maker.'" *In the Matter of City of Beaumont, Texas*, CBCA 7222-FEMA at 5 (January 12, 2022) (quoting *Livingston Parish Government*, CBCA 6513-FEMA, 19-1, BCA ¶ 37,436 (2019) (emphasis retained) and *Bay St. Louis-Waveland School District*, CBCA 1739-FEMA, 10-1 ¶ 34,335 (2009)).

7.     Metro Nashville is aggrieved by FEMA's refusal to consider the merits of the appeals because it has a statutory right to fair and impartial consideration of its appeals, which demonstrated that the disaster recovery work performed and costs incurred by Metro Nashville were properly documented and eligible for disaster assistance funding.

## PARTIES, JURISDICTION, AND VENUE

8.     Metro Nashville is a local Metropolitan Government organized under the laws of the State of Tennessee with its principal place of business located at One Public Square, Nashville, Tennessee 37201.

9.     FEMA, an agency in the U.S. Department of Homeland Security, is the federal agency delegated the authority to administer the provisions of the Stafford Act.

10.     Deanne Criswell is the Administrator of FEMA.  In that capacity, Administrator Criswell is responsible for the overall administration of FEMA.  Administrator Criswell is made a defendant in her official capacity.

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this is a civil action arising under the laws of the United States.

12.     Defendants are subject to the personal jurisdiction of this Court.

13.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, because an agency of the United States is a defendant, a substantial part of the events or omissions giving rise to the claim occurred here, and Plaintiff resides here.

## REGULATORY BACKGROUND AND STATEMENT OF FACTS

### *The FEMA Public Assistance Program*

14.     FEMA's Public Assistance Program, authorized by the Stafford Act, provides federal financial assistance to governmental entities and certain private non-profit organizations following a Presidential disaster declaration.  42 U.S.C. § 5121, *et seq*.

3

15. FEMA uses Project Worksheets ("PWs") to document the scope of work and cost estimate for disaster-related projects funded by a FEMA grant under the Public Assistance Program. FEMA updates PWs to reflect changes to the work or cost as more information, invoices, and other documentation reflecting the actual cost of approved work become available. Each revised PW is assigned a new "version" number, with the initial PW version being "Version 0."

16. The State "grantee" serves as grant administrator of FEMA's subgrants to all eligible applicants/subgrantees in the grantee's state, including facilitating all communication between FEMA and subgrantees (each local government, tribal government, or private non-profit applicant for assistance is a "subgrantee") and making all disbursements to subgrantees of approved disaster assistance funding. 44 C.F.R. § 206.202(b).[2]

### *The Public Assistance Appeal Right*

17. All "applicant[s]" for federal disaster assistance have a statutory "RIGHT OF APPEAL" from "[a]ny FEMA decision regarding eligibility for, from, or the amount of assistance" under Title IV of the Stafford Act. Stafford Act § 423 (42 U.S.C. § 5189a(a)).

18. Section 423 of the Stafford Act further provides that the President, who has delegated authority to FEMA, shall "issue rules which provide for the fair and impartial consideration of appeals under this section." 42 U.S.C. § 5189a(c).

19. For purposes of administering the Stafford Act, FEMA defines an "applicant" for disaster assistance as "Individuals, families, States and local governments, or private nonprofit organizations who apply for assistance as a result of a declaration of a major disaster or emergency." 44 C.F.R. § 206.2.

---

[2] The regulations were amended in 2014 to generally replace the term "grantee" with "recipient", and "subgrantee" with "subrecipient"; however, the prior terminology is used herein consistent with the version of the regulations applicable at the time of this event.

20.     In promulgating the agency regulation to ensure applicants' statutory "RIGHT OF APPEAL," FEMA was unequivocal that "the word 'applicant' in the Act," is a reference "not only to a State agency for the State project, but also to a local government or PNP [private nonprofit]." 55 Federal Register 2297, 2299 (January 23, 1990). Accordingly, under the Stafford Act and its implementing regulations, local governments maintain a statutory "RIGHT OF APPEAL," independent of the "State agency for the State project." *Id.*; Stafford Act § 423; 42 U.S.C. § 5189(a); 44 C.F.R. § 206.206(c)(1).

21.     The Stafford Act provides a 60-day deadline within which an applicant for federal disaster assistance may submit an appeal (Stafford Act § 423(a); 42 U.S.C. § 5189a(a)), and a 90-day period within which FEMA "shall" render a decision on the appeal (Stafford Act § 423(b); 42 U.S.C. § 5189a(b)).

22.     FEMA's regulations to administer the Stafford Act create two levels of appeal— one to the applicable FEMA Regional Administrator (a "First Appeal"), and, if necessary, the next to the Assistant Administrator for the Recovery Directorate at FEMA headquarters (a "Second Appeal"). 44 C.F.R. § 206.206(b).

23.     While Stafford Act § 423 makes no reference to the grantee, the regulations insert the grantee into FEMA's administrative process for federal disaster assistance appeals. The regulations require that applicants, such as Metro Nashville, "must file" appeals to the state agency acting as grantee, within 60 days after receipt of notice of the action that is being appealed. 44 C.F.R. § 206.206(a) & (c)(1). The regulations then provide that the state agency acting as grantee "will review and forward" appeals from an applicant/subgrantee, "with a written recommendation to the FEMA Regional Administrator" within 60 days of receipt. 44 C.F.R. § 206.206(c)(2).

5

24.     In accordance with the requirements of the Stafford Act, the regulations specify that FEMA "will" take action on the appeal within 90 days after receipt from the grantee. 44 C.F.R. § 206.206(c)(3).

25.     The regulations further insert a process by which FEMA may request additional information from an appellant through a request for information ("RFI") within 90 days following receipt of an appeal.  44 C.F.R. § 206.206(c)(3).  If FEMA requests information, then the regulations state that FEMA "will" issue a determination on the appeal within 90 days following either the receipt of the requested additional information, or expiration of the deadline for submitting the additional information.  44 C.F.R. § 206.206(c)(3).

<u>*Tennessee Floods of 2010 and Federal Disaster Declaration.*</u>

26.     Torrential rainstorms hit Middle Tennessee in May 2010 with back-to-back record-breaking days of rainfall on May 1 and 2, and combined total rainfall of over thirteen inches.

27.     The storms caused widespread flash flooding and river flooding through much of Middle Tennessee, including in Metro Nashville, and killed 18 people.  The Cumberland River, which runs through downtown Nashville, crested at almost 52 feet on May 3, and many other rivers and creeks in Metro Nashville surpassed prior record levels.

28.     The storms also brought several rounds of severe thunderstorms and six confirmed tornadoes that caused serious wind damage.

29.     Metro Nashville sustained extensive damage during the 2010 flooding.

30.     The torrential rain and massive flooding damaged nearly 11,000 properties and caused more than $2 billion in private property damage and $120 million in public infrastructure damage.

6

31.     President Barack Obama declared a major disaster on May 4, 2010, designating numerous counties in Middle Tennessee eligible for FEMA Public Assistance funding, including Davidson County, Tennessee, where Metro Nashville is located.  75 F.R. 26977.

*Damage to Metro Nashville Facilities*

32.     The flooding caused significant impacts to the Metro Nashville K.R. Harrington Water Treatment Facility, which was forced to shut down when floodwaters submerged the on-site electrical substation and emergency power generators.  The damage was so severe that the facility remained shut down until June 1, 2010, when it opened only in a limited capacity.

33.     Metro Nashville conducted a thorough risk and vulnerability assessment of the K.R. Harrington Water Treatment Facility after the flooding, through which it identified several hazard mitigation projects to help mitigate future flooding damage.

34.     The flooding also inundated Metro Transit Authority ("MTA") buildings and contaminated them with various hazardous materials, including gasoline, oil, and sewage.

*Metro Nashville's Application for Disaster Assistance, FEMA's Development of PWs, and FEMA's Subsequent Denial of Funding*

35.     Metro Nashville is a local government eligible to apply for federal disaster assistance.  Stafford Act § 102(8)(A), 42 U.S.C. § 5122(8)(A); Stafford Act § 406(a), 42 U.S.C. § 5172(a); and 44 C.F.R. §§ 206.2 & 206.222.

36.     Because Metro Nashville was located in a designated disaster area and owned and operated facilities damaged by the flooding, Metro Nashville was eligible to apply for disaster assistance funding under FEMA's Public Assistance Program.  44 C.F.R. §§ 206.222 & 223.

37.     Work to decontaminate and restore Metro Nashville's buildings that were damaged as a direct result of the flooding is eligible work under FEMA's Public Assistance Program.  Stafford Act § 406(a), 42 U.S.C. § 5172(a).

7

38.     Work to mitigate future hazards is also eligible work under FEMA's Public Assistance Program when related to damaged portions of facilities damaged by the disaster and subject to additional regulatory requirements, including consideration of cost-effectiveness, technical feasibility, and effectiveness.

39.     Metro Nashville requested that FEMA provide Public Assistance Program funding to reimburse the costs of work to address disaster-related damages and to pay for work to mitigate future hazards.

40.     FEMA prepared PWs 5517 and 5523 to capture the necessary work to be performed to repair the damage to the electrical switchgear building and the generator building at the K.R. Harrington Water Treatment Facility and facilitate obligation of federal funds to reimburse Metro Nashville for the cost of the eligible work.

41.     As part of PWs 5517 and 5523, Metro Nashville submitted a Hazard Mitigation Proposal ("HMP") to FEMA to construct a new switchgear and generator building, relocate all critical components of the generator building then in service to another structure out of the floodplain, and repurpose the generator building.

42.     FEMA ultimately only obligated $698,738.21 for the repairs to the electrical switchgear building and the generator building and denied Metro Nashville's $11,037,918.44 HMP as ineligible based on a typographic error in Metro Nashville's proposal.

43.     FEMA prepared PW 5543 to capture work to be performed to decontaminate the MTA buildings and facilitate obligation of federal funds to reimburse Metro Nashville for the cost of the work determined eligible for funding.

44.     The total costs, acknowledged by FEMA in PW 5543, to complete the decontamination work was $2,602,955.29.

8

45.     FEMA then reduced the total costs by what it termed "mandatory" National Flood Insurance Program ("NFIP") reductions of $291,673.00, among other reductions.

46.     FEMA ultimately obligated only $1,930,451.29 under PW 5543 for the work to decontaminate the MTA buildings.

*Metro Nashville's Appeals for PWs 5517 and 5523*

47.     On April 16, 2012, Metro Nashville received notice of FEMA's denial of $11,037,918.44 for its HMP in PWs 5517 and 5523.

48.     On June 12, 2012, less than 60 days after receipt of notice of FEMA's determination regarding PWs 5517 and 5523, Metro Nashville filed a First Appeal (the "HMP First Appeal") with TEMA.  The HMP First Appeal contested FEMA's decision to deny eligible hazard mitigation funding under PWs 5517 and 5523.  Exhibit 1, Metro Nashville HMP First Appeal and Forwarding Letter from TEMA.

49.     On the same day, by letter dated June 12, 2012, TEMA forwarded Metro Nashville's HMP First Appeal to the FEMA Regional Administrator, Region IV.  *Id*.  Pursuant to TEMA's then standard practice with respect to appeals by applicants/subgrantees, TEMA did not notify or otherwise communicate with Metro Nashville about this action.

50.     In violation of the Stafford Act, FEMA did not render a decision on the HMP First Appeal within 90 days of receipt of the appeal from TEMA.  Nor did FEMA issue a Request for Information within 90 days of receipt of the appeal from TEMA, consistent with its regulations.   Pursuant to TEMA's then-standard practice with respect to appeals by applicants/subgrantees, TEMA did not notify or otherwise communicate with Metro Nashville about this inaction by FEMA.

51.     Neither Metro Nashville nor TEMA was alarmed by FEMA's unlawful failure to timely respond to the HMP First Appeal.  Based on past experience, both Metro Nashville and

9

TEMA were accustomed to FEMA routinely violating § 423(b) of the Stafford Act which states that FEMA shall render a decision within 90 days of receipt of an appeal. 42 U.S.C. § 5189a(b). Following the 2010 Tennessee Floods, FEMA issued a total of 258 denials of disaster assistance from which Metro Nashville timely appealed. FEMA issued a response within 90 days as required by Stafford Act § 423(b) for only seven of the 258 timely appeals filed by Metro Nashville. On average, FEMA responded to Metro Nashville's timely appeals 497 days after the appeals were filed, and it was not uncommon for FEMA to wait 2-3 years before responding to Metro Nashville's appeals. *See* Exhibit 2, Metro Nashville Appeal History.

52.     FEMA's policy of violating Stafford Act § 423(b) is not limited to Metro Nashville's appeals. When Metro Nashville filed its HMP First Appeal, FEMA's routine practice of missing the statutory deadline for processing appeals was well documented. Data compiled in a 2011 investigation performed by the United States Office of the Inspector General for the Department of Homeland Security ("OIG") found that FEMA regional offices timely processed appeals only 50% of the time and FEMA Headquarters confirmed "that second-level appeal decisions generally exceeded the established regulatory timeframes." OIG Report No. OIG 11-49. When the Government Accountability Office ("GAO") investigated FEMA's appeal response procedures six years later, FEMA's performance had further declined. The GAO issued a Report in December 2017 on the timeliness of FEMA's Public Assistance Appeals Processing. GAO-18-143. This Report summarized the timeliness of FEMA's Public Assistance Appeals processing in 2016 and 2017. *Id.* It found that FEMA timely decided appeals approximately ten percent of the time. *Id.*

53.     FEMA's consistent illegal practice of taking years to process Metro Nashville's appeals rather than adhering to its 90-day statutory deadline made it difficult for TEMA and

10

Metro Nashville to track the status of Metro Nashville's 258 appeals to FEMA. Many of the appeals languished before FEMA for long, unpredictable amounts of time with no response of any kind from FEMA. Throughout 2012, 2013, 2014, 2015, and 2016, the HMP First Appeal was one of many first appeals that Metro Nashville had timely filed only to wait years without receiving a response of any kind response from FEMA. *See* Exhibit 2, Metro Nashville Appeal History.

54.     In April 2015, Metro Nashville worked to confirm the status of the 43 remaining HMPs that were either pending or on appeal with FEMA. Metro Nashville prepared an inventory of the 43 projects and noted PWs 5523 and 5517 as "Denied/Appealed 6/12/12." *See* Exhibit 3, April 2015 E-mail Correspondence (This e-mail correspondence was also discussed and cited in Footnotes 6 & 7 and accompanying text of FEMA Second Appeal Determination, Nashville-Davidson County, FEMA-1909-DR-TN (July 2, 2018)).

55.     In November of 2015, FEMA began sending TEMA monthly "First Appeal Status Reports" to help TEMA track FEMA's unlawful delays in responding to appeals of disaster assistance denials. TEMA notified FEMA when the "First Appeal Status Reports" contained errors such as pending appeals which were not accounted for by FEMA. *See* Exhibit 4, TEMA Responses to FEMA "First Appeal Status Reports"; FEMA Admin. R. Index for PW 5517 & 5523, Doc. Nos. 13-18.

56.     When TEMA personnel inquired about the status of the HMP First Appeal, a FEMA official informed TEMA that the HMP First Appeal would not be included on "First Appeal Status Reports" because it was a hazard mitigation appeal, which would be treated separately from the standard Public Assistance appeals on the status reports. See Exhibit 5, E-mail Correspondence from TEMA Public Assistance Specialist, Kelly Jo Dyer (This e-mail

correspondence was also discussed in Footnote 10 of FEMA Second Appeal Determination, Nashville-Davidson County, FEMA-1909-DR-TN (July 2, 2018)).

57.     At no time in 2012, 2013, 2014, 2015, or 2016 did FEMA provide any notice or indication to Metro Nashville, or to TEMA, that Metro Nashville's HMP First Appeal was untimely, or that TEMA had forwarded the appeal untimely.

58.     In 2017, after FEMA had taken no action on the HMP First Appeal for over 1,700 days, and after repeated inquiries from TEMA about the HMP First Appeal, FEMA finally informed TEMA that it could not locate the Appeal.

59.     TEMA, therefore, resubmitted the HMP First Appeal on February 8, 2017.

60.     FEMA did not render a decision or issue a Request for Information on the HMP First Appeal within 90 days of TEMA's re-submittal contrary to FEMA's own statutory and regulatory deadline for deciding appeals.

*Metro Nashville's Appeal for PW 5543*

61.     On August 18, 2015, Metro Nashville received notice of FEMA's denial of $261,673 under PW 5543.

62.     On October 6, 2015, less than 60 days after receipt of notice of FEMA's denial regarding PW 5543, Metro Nashville filed a First Appeal (the "5543 First Appeal") addressed to the FEMA Regional Administrator, Region IV, through TEMA.  The First Appeal contested the decision to apply a mandatory NFIP reduction to PW 5543, thereby offsetting and effectively denying reimbursement of otherwise eligible costs.

63.     TEMA forwarded Metro Nashville's 5543 First Appeal to FEMA by letter dated March 16, 2017.  TEMA noted in the letter that it had not previously forwarded the 5543 First Appeal due to an error caused by staffing changes, but that Metro Nashville had submitted the 5543 First Appeal within the statutory timeframe.  Pursuant to TEMA's then-standard practice

12

with respect to appeals by applicants/subgrantees, TEMA did not notify or otherwise communicate with Metro Nashville about this action.

64. FEMA did not render a decision or issue a Request for Information on the 5543 First Appeal within 90 days of receipt of the appeal from TEMA contrary to FEMA's own statutory and regulatory deadline for responding to appeals.

*FEMA's Response to Metro Nashville's Appeals*

65. FEMA issued Requests for Information to Metro Nashville by letters received on August 28, 2017 (the "HMP RFI") and September 1, 2017 (the "5543 RFI").

66. In the RFIs, FEMA asserted that the record did not contain sufficient information documenting that TEMA transmitted Metro Nashville's First Appeals within 60 days of receipt, as required by 44 C.F.R. § 206.206(c).

67. In the HMP RFI, FEMA requested information documenting TEMA's timely transmittal of the HMP First Appeal, which had been timely filed and forwarded by TEMA 1,903 days earlier. Despite requesting Metro Nashville provide documentation of its actions from five years earlier, FEMA did not and has not to date, provided any explanation or documentation regarding FEMA's inability to account for TEMA's timely forwarding of the HMP First Appeal on June 12, 2012.

68. TEMA timely responded to the HMP RFI on September 22, 2017, confirming that it timely forwarded the HMP First Appeal on June 12, 2012, providing corroborating internal communications, and reminding FEMA that its February 8, 2017 resubmission of the Appeal was consistent with TEMA's past practice to help FEMA resolve FEMA's difficulties locating previously filed records. TEMA continues to assert that it forwarded the HMP First Appeal on June 12, 2012, within the time limits provided by 44 C.F.R. 206.206(c)(2).

69. Metro Nashville timely responded to the 5543 RFI on September 26, 2017.

70.     TEMA also timely responded to the 5543 RFI on September 25, 2017.  TEMA confirmed that Metro Nashville had timely submitted the 5543 First Appeal, but admitted that, due to staffing changes and unintentional human error, TEMA's submission was not timely.  TEMA noted that this was the only instance in which it had missed a deadline, but that FEMA had missed its own deadlines in all of the 200 flood-related appeals that TEMA sampled.

71.     On November 13, 2017, 973 days after TEMA forwarded Metro Nashville's 5543 Appeal, FEMA issued its First Appeal Determination denying Metro Nashville's 5543 First Appeal based solely on TEMA's failure to transmit the Appeal within 60 days of receipt, as required by 44 C.F.R. § 206.206(c)(2).

72.     FEMA refused to consider the substantive issues in Metro Nashville's 5543 First Appeal solely because FEMA asserts it did not receive the 5543 First Appeal from TEMA within 60 days of TEMA's receipt of the 5543 First Appeal from Metro Nashville.

73.     On February 26, 2018, 2,085 days after TEMA timely forwarded the HMP Appeal, FEMA issued its First Appeal Determination denying Metro Nashville's HMP First Appeal based solely on TEMA's alleged failure to transmit the Appeal within the regulatory timeframe provided by 44 C.F.R. § 206.206(c)(2).

74.     FEMA refused to consider the substantive issues in Metro Nashville's HMP First Appeal solely because FEMA asserts it did not receive the HMP First Appeal from TEMA within 60 days of TEMA's receipt of the HMP First Appeal from Metro Nashville.  FEMA did not, however, offer any explanation, documentation, or proof of any kind that it did not receive the HMP First Appeal when TEMA transmitted it on June 12, 2012.

75.     Metro Nashville timely filed Second Appeals on January 12, 2018 (the "5543 Second Appeal") and April 26, 2018 (the "HMP Second Appeal") – each within 60 days of receiving FEMA's First Appeal Determination.

76.     In its Second Appeals, Metro Nashville argued primarily that FEMA's decisions denied Metro Nashville its statutory "RIGHT OF APPEAL," and the decisions were contrary to Stafford Act §§ 423, 325.

77.     TEMA timely transmitted Metro Nashville's Second Appeals to FEMA by letters dated January 23, 2018 (the "5543 Second Appeal") and April 27, 2018 (the "HMP Second Appeal").

78.     On April 23, 2018 and July 2, 2018, FEMA issued Second Appeal Determinations, rejecting Metro Nashville's arguments as to timeliness and again denying Metro Nashville's Second Appeals without any consideration of the underlying merits.

79.     FEMA claimed in its Second Appeal Determinations that it has consistently time-barred appeals based on grantees forwarding applicants' appeals beyond 60 days for years.

80.     In fact, the record of FEMA's published Second Appeal Decisions indicates that the opposite was true until March of 2017.  Prior to March of 2017, state grantees regularly forwarded appeals that had been timely submitted by applicants, to FEMA beyond 60 days, and FEMA did not apply 44 C.F.R. § 206.206(c)(2) as a time bar to those applicants' statutory "RIGHT OF APPEAL."

81.     From 2009 to 2014, FEMA issued 548 Second Appeal decisions.  Among them, were at least 98 (18%) in which the applicant's First Appeal, Second Appeal, or both had been forwarded by the grantee more than 60 days after the date of the appeal.  In all of these decisions, FEMA either granted or denied the appeals on the merits.  In none of these decisions did FEMA

deny an appeal due to late forwarding by the state grantee. Only in one of the 98 decisions did FEMA deny an appeal in part due to the state grantee's 677-day delay in forwarding the appeal. The 98 decisions are listed in Appendix 1 to this Complaint.

82.     It was not until FEMA issued the *City of Pensacola* Second Appeal Determination on March 22, 2017 that FEMA began asserting as a matter of policy that, pursuant to 44 C.F.R. § 206.206(c)(2), FEMA was without authority to consider appeals which had been timely submitted by applicants under Stafford Act § 423 but forwarded to FEMA by State grantees beyond 60 days. FEMA Second Appeal Determination, *City of Pensacola*, FEMA-1551-DR-FL (March 22, 2017). Since the *City of Pensacola* Second Appeal Determination in March of 2017, FEMA has refused to consider the merits of 43 appeals which were timely submitted by applicants under Stafford Act § 423 but forwarded more than 60 days later by state grantees. Those 44 decisions are listed as Appendix 2 to this Complaint.

83.     Additionally, FEMA policy applicable to the 2010 flooding event provides grantees (here, TEMA) with the ability to extend the appeal deadline where necessary to gather additional information. Public Assistance Guide, FEMA 322, at 113 (2007) ("The State will review the appeal documentation and request additional information if necessary. The State will then prepare a written recommendation on the merits of the appeal and forward that recommendation to FEMA within 60 days of its receipt of the appeal letter <u>or receipt of additional information that it had requested</u>.") (emphasis added).

## COUNT I

## (Erroneous Determination of Untimeliness Violates Stafford Act § 423)

84.     Metro Nashville incorporates by reference the allegations set forth in paragraphs 1 through 60 and 65 through 83 above as if fully set forth herein.

85. The Stafford Act affords applicants for disaster assistance an administrative "RIGHT OF APPEAL" from "any decision regarding eligibility for, from, or amount of assistance…within 60 days after the date on which the applicant for such assistance is notified of the award or denial of award of such assistance." Stafford Act § 423(a); 42 U.S.C. § 5189a.

86. As articulated by the CBCA in its decision regarding a similar dispute, Stafford Act § 423 "gives the right to appeal to the applicant, who perfects its appeal by filing it within sixty days after receiving notice of the funding denial." *In the Matter of City of Beaumont, Texas*, CBCA 7222-FEMA at 8 (January 12, 2022); *see also In the Matter of Consolidated North County Levee District*, CBCA 7244-FEMA, 7245-FEMA at 3 (June 2, 2022).[3]

87. Metro Nashville timely appealed FEMA's decisions to deny $11,037,918.44 in costs under PWs 5517 and 5523 (HMP First Appeal) within 60 days of its receipt of notice of FEMA's decisions in accordance with 44 C.F.R. § 206.206(c)(1).

88. TEMA timely forwarded Metro Nashville's HMP First Appeal to FEMA within 60 days of its receipt of the Appeal from Metro Nashville in accordance with 44 C.F.R. § 206.206(c)(2).

89. In its HMP Second Appeal Determination, FEMA erroneously, without citing any evidence, determined that TEMA had not timely forwarded Metro Nashville's HMP First Appeal to FEMA within 60 days in accordance with 44 C.F.R. § 206.206(c)(2).

90. FEMA's HMP Second Appeal Determination, in which FEMA refused to consider Metro Nashville's Second Appeal based on an erroneous determination of untimeliness, denied Metro Nashville fair and impartial consideration of its timely exercised statutory RIGHT OF APPEAL.

---

[3] We do acknowledge that the Decisions cited were issued by two separately assigned three-judge Panels of the CBCA that presided over these arbitration actions and are not binding authority; however, we present this analysis as persuasive consideration of the issues presented herein.

91.     Under 5 U.S.C. § 706, a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions" found to be "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or "without observance of procedure required by law." 5 U.S.C. § 706(2).

92.     FEMA's denial of Metro Nashville's HMP Appeal is a final agency action that is not in accordance with law, and in excess of its statutory authority under the Stafford Act, because it violates Metro Nashville's statutory "RIGHT OF APPEAL" as provided by Congress under the Stafford Act.

## COUNT II

### (Agency Action Contrary to Stafford Act § 423)

93.     Metro Nashville incorporates by reference the allegations set forth in paragraphs 1 through 83 above as if fully set forth herein.

94.     The Stafford Act affords applicants for disaster assistance an administrative "RIGHT OF APPEAL" from "any decision regarding eligibility for, from, or amount of assistance…within 60 days after the date on which the applicant for such assistance is notified of the award or denial of award of such assistance."  Stafford Act § 423(a); 42 U.S.C. § 5189a.

95.     As articulated by the CBCA, Stafford Act § 423 "gives the right to appeal to the applicant, who perfects its appeal by filing it within sixty days after receiving notice of the funding denial." *In the Matter of City of Beaumont, Texas*, CBCA 7222-FEMA at 8 (Jan. 12, 2022); *see also In the Matter of Consolidated North County Levee District*, CBCA 7244-FEMA, 7245-FEMA at 3 (June 2, 2022).[4]  Further, regarding FEMA's administrative framework related to Stafford Act § 423, the CBCA determined that an appeal may not "retroactively be deemed untimely because FEMA's designated agent for accepting the applicant's appeal [the state

---

[4] *See infra.* at footnote 3.

Grantee] did not act appropriately in subsequently administering the timely-filed appeal." *City of Beaumont at 8.*

96.     Metro Nashville timely appealed FEMA's decisions to deny $11,037,918.44 in costs under PWs 5517 and 5523 and $261,673 under PW 5543 within 60 days of its receipt of notice of FEMA's denials of funding.

97.     Congress has given "the applicant" for disaster assistance a "RIGHT OF APPEAL" from FEMA's denial of such assistance.  Stafford Act § 423; 42 U.S.C. § 5189a.  It is not disputed that Metro Nashville is the applicant and TEMA is the grantee.  Stafford Act § 423 makes no reference to grantees.  Outside of the Stafford Act, FEMA has chosen to involve state grantees in its administrative process for reviewing appeals.

98.     As specified by the Stafford Act, FEMA may adopt rules to ensure "the fair and impartial consideration of appeals" in a manner consistent with the Stafford Act.  Stafford Act § 423(c); 42 U.S.C. § 5189a(c).  However, FEMA's administrative process may not nullify, contradict, abridge, or alter applicant Metro Nashville's "RIGHT OF APPEAL" provided by the Stafford Act.

99.     Metro Nashville properly filed its Appeals in accordance with the Stafford Act and FEMA's regulations.  FEMA's refusal to consider Metro Nashville's appeals based on FEMA's determination that the appeals are untimely because FEMA alleges that State grantee, TEMA, forwarded the HMP First Appeal and 5543 First Appeal beyond 60 days after Metro Nashville's timely submission, is contrary to Stafford Act § 423(a).

100.     Under 5 U.S.C. § 706, a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions" found to be "in excess of statutory jurisdiction,

authority, or limitations, or short of statutory right," or "without observance of procedure required by law." 5 U.S.C. § 706(2).

101.    FEMA's denial of Metro Nashville's Second Appeals is a final agency action that is not in accordance with law, and in excess of its statutory authority, because it violates Metro Nashville's statutory "RIGHT OF APPEAL" as provided by Congress under the Stafford Act.

## COUNT III

### (Agency Action Contrary to Stafford Act § 325(a)(1))

102.    Metro Nashville incorporates by reference the allegations set forth in paragraphs 1 through 83 above as if fully set forth herein.

103.    Stafford Act § 325(a)(1) provides the "President shall provide for public notice and opportunity for comment before adopting any new or modified policy that—(A) governs implementation of the public assistance program administered by the Federal Emergency Management Agency under this chapter; and (B) could result in a significant reduction of assistance under the program."  42 U.S.C. § 5165c(a)(1).

104.    Prior to 2017, FEMA had no policy requiring it to refuse to consider the merits of or deny appeals of public assistance decisions based on the failure of the grantee to forward an applicant/subgrantee's appeal to FEMA within the prescribed regulatory timeframe.

105.    As indicated by the FEMA Second Appeal Determinations in Appendices 1 and 2 to this Complaint, FEMA's policy prior to 2017, was to consider the merits of appeals of disaster assistance decisions regardless of whether the appeal was forwarded to FEMA by the grantee within 60 days of the applicant's submission to the grantee.  *See* Appendix to this Complaint.

106.    Almost 100 second appeals decided by FEMA over the six years from 2009-2014 – 18% of the total number of second appeal decisions – were decided on the merits despite late forwarding by the grantee.

107.    In March of 2017, beginning with its *City of Pensacola* Second Appeal Determination, FEMA abruptly changed its policy when it began refusing to consider the merits of appeals timely filed by applicants but which were not forwarded to FEMA by State grantees within 60 days.

108.    Following *City of Pensacola*, FEMA's policy has been to deny appeals as untimely when forwarded by grantees beyond 60 days even when applicants have properly exercised their statutory "RIGHT OF APPEAL" by timely filing with state grantees.

109.    FEMA has yet to provide notice or an opportunity for comment regarding its new or modified policy to refusal to consider appeals forwarded by grantees beyond 60 days, and FEMA's application of this new policy to deny consideration of Metro Nashville's appeals could result in a significant reduction of disaster assistance to Metro Nashville.

110.    By refusing to consider the merits of Metro Nashville's timely filed appeals based on its new or modified policy implemented without notice or an opportunity to comment, FEMA has taken action contrary to Stafford Act § 325(a)(1) adversely affecting Metro Nashville.

111.    Under 5 U.S.C. § 706, a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions" found to be "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or "without observance of procedure required by law." 5 U.S.C. § 706(2). FEMA's denial of Metro Nashville's Second Appeals is a final agency action that is not in accordance with law, because it violates Metro Nashville's

statutory "RIGHT OF APPEAL" as provided by Congress under the Stafford Act, by application of a policy that violates Stafford Act § 325(a)(1).

**COUNT IV**

**(Agency Action Contrary to Stafford Act § 325(a)(2))**

112. Metro Nashville incorporates by reference the allegations set forth in paragraphs 1 through 83 above as if fully set forth herein.

113. Stafford Act § 325(a)(2) provides that "Any policy adopted under paragraph (1) shall apply only to a major disaster or emergency declared on or after the effective date on which the policy is adopted." 42 U.S.C. § 5165c(a)(2)

114. After FEMA's March 22, 2017 *City of Pensacola* Second Appeal Determination, and thereafter, FEMA abruptly changed its policy and began denying applicants' their Right to Appeal by refusing substantive consideration of appeals timely filed by applicants, but forwarded to FEMA by state grantees beyond 60 days. As indicated by the FEMA Second Appeal Determinations in Appendices 1 and 2 to this Complaint, FEMA's policy prior to *City of Pensacola* was to consider the merits of an applicant's timely filed appeal, regardless of whether the grantee forwarded that appeals to FEMA within 60 days. Following *City of Pensacola*, FEMA's policy has been to refuse consideration of the merits and deny appeals as untimely when forwarded by grantees beyond 60 days, even when applicants have properly exercised their statutory "RIGHT OF APPEAL" by timely filing with state grantees.

115. The President authorized the Federal disaster declaration for the 2010 Tennessee floods on May 4, 2010. FEMA changed its policy in March of 2017. Therefore, the disaster declaration clearly preceded FEMA's policy change.

116. By refusing to consider the merits of Metro Nashville's timely filed appeals based on its new or modified policy implemented after the disaster declaration, FEMA has taken action contrary to Stafford Act § 325(a)(2) adversely affecting Metro Nashville.

117. Under 5 U.S.C. § 706, a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions" found to be or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or "without observance of procedure required by law." 5 U.S.C. § 706(2). FEMA's denial of Metro Nashville's Second Appeals is a final agency action that is not in accordance with law, and in excess of its statutory authority, because it violates Metro Nashville's statutory "RIGHT OF APPEAL" as provided by Congress under the Stafford Act, by application of a policy that violates Stafford Act § 325(a)(2).

## PRAYER FOR RELIEF

WHEREFORE, Metro Nashville requests entry of final judgment:

(1) setting aside FEMA's Second Appeal Determinations as contrary to law and in violation of Stafford Act §§ 423, 325, or both;

(2) directing FEMA to provide fair and impartial consideration of the merits of Metro Nashville's First Appeals filed in 2012 and 2015 pursuant to Stafford Act §§ 423, 325, or both; and

(3) awarding Metro Nashville such other relief as may be just, proper, and equitable.

Respectfully submitted, this 19th day of July, 2022.


/s/ Daphne Bugelli
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
Daphne Bugelli

1600 West End Avenue, Suite 2000
Nashville, TN 37203
Telephone: (615) 726-5576
Facsimile: (615) 726-0464
Email: dbugelli@bakerdonelson.com

Wendy Huff Ellard, Esq.
*Pro Hac Vice Application Pending*
One Eastover Center
100 Vision Drive
Suite 400
Jackson, Mississippi 39211
Telephone: (601) 969-4681
Facsimile: (601) 592-2405
Email: wellard@bakerdonelson.com

Ernest B. Abbott, Esq.
*Pro Hac Vice Application Pending*
901 K Street NW
Suite 900
Washington, DC 20001
Telephone: (202) 508-3425
Facsimile: (202) 220-2225
Email: eabbott@bakerdonelson.com

Parker Wiseman, Esq.
*Pro Hac Vice Application Pending*
One Eastover Center
100 Vision Drive
Suite 400
Jackson, Mississippi 39211
Telephone: (601) 351-2435
Facsimile: (601) 592-2405
Email: pwiseman@bakerdonelson.com

*Counsel for Plaintiff Metropolitan Government
of Nashville and Davidson County, Tennessee*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 19, 2022, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF. Copies of the foregoing document will be served upon counsel of record by transmission of Notices of Electronic Filing generated by the Court's CM/ECF system.

/s/ Daphne Bugelli
Daphne Bugelli